Doug Solomon (State Bar No. 042771995)
**JACKSON LEWIS P.C.**
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
Tel: (908) 795-2970
Email: doug.solomon@jacksonlewis.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY TRANSIT RAIL OPERATIONS, INC.,<br><br>               Plaintiff,<br><br>v.<br><br>BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN<br><br>               Defendant. | Civil Action No. 2:24-cv-11102(CCC)(CLW) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINTS AND PRELIMINARY INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

LEGAL ARGUMENT ........................................................................................................... 1

    I.    Contrary to the BLET's Arguments, the 10.4% Differential Dispute is a Major Dispute. ........................................................................................................................ 1

    II.    Defendant Never Had the Right to Immediate Payment of the 10.4% Differential Upon Receipt of Wage Increases by SMART-TD. ...................................................... 4

    III.    Defendant's Reasons for Not Filing Claims in the Past When the 10.4% Differential Was Not Immediately Maintained is Irrelevant. ............................................ 7

    IV.    The Current CBA is, at the very least, Ambiguous Concerning the Timing of the 10.4% Differential Payment When SMART-TD Conductors Receive a Wage Increase. ... 8

    V.    The Norris-LaGuardia Act Does Not Preclude this Court from Issuing Injunctive Relief to Enjoin the 10.4% Differential Arbitration. ............................................................. 9

        A.    Plaintiff Satisfies the First Prong of the NLA's requirements for Injunctive Relief Because Absent Injunctive Relief, Unlawful Acts will be Committed. ................ 10

        B.    Plaintiff Satisfies the Second Prong of the NLA's Requirements for Injunctive Relief Because the Irreparable Harm to Plaintiff Would be "Substantial." ................. 11

        C.    Section 8 of the Norris-LaGuardia Act Does Not Preclude Injunctive Relief Because Plaintiff's Hands Are Clean as a Whistle. ........................................................ 12

    VI.    The PEB Reports Demonstrate the Existence of a Major Dispute. ......................... 14

CONCLUSION .................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**

*Air Line Pilots Ass'n v. Eastern Air Lines*, 863 F.2d 891 (D.C. Cir. 1988) ..................................... 5

*Detroit & Toledo Shore Line R. Co. v. Transportation Union*, 396 U.S. 142 (1969) .................... 6

*General Committee of Adjustment, United Transp. Union, etc. v. CSX R. Corp.*, 893 F.2d 584 (3d Cir. 1990) ....................................................................................................................... 3

**Statutes**

29 U.S.C. 107 .......................................................................................................................... 11, 12

29 U.S.C. 108 ................................................................................................................................ 13

45 U.S.C. § 151 ............................................................................................................................... 1

45 U.S.C. 159a .............................................................................................................................. 12

**PRELIMINARY STATEMENT**

Plaintiff New Jersey Transit Rail Operations, Inc. ("NJTRO" or "Carrier"), submits this reply brief in further support of its motion seeking temporary restraints and preliminary injunctive relief against Defendant, Brotherhood of Locomotive Engineers and Trainmen, ("BLET" or "Defendant") to preserve the Railway Labor Act's ("RLA") (45 U.S.C. § 151 et seq.) *status quo* provisions.

**LEGAL ARGUMENT**

**I.  Contrary to the BLET's Arguments, the 10.4% Differential Dispute is a Major Dispute.**

Plaintiff recognizes that pursuant to the RLA, minor disputes are under the exclusive jurisdiction of arbitration panels known as "Public Law Boards" ("PLBs") or "Special Boards of Adjustment" ("SBAs") and are otherwise referable to the National Railroad Adjustment Board ("NRAB"). Plaintiff also fully accepts that Defendant's argument that federal courts play a limited role in minor disputes. Notwithstanding Plaintiff's arguments, none of that is applicable to the issue here because the 10.4% dispute is a major dispute, not a minor dispute.

The 10.4% differential is part of the ongoing negotiation between the parties for a new CBA. It relates specifically to wage increases for the BLET's Engineers and the timing of such wage increases, which are issues that are required to be resolved through the RLA's major dispute resolution process. Proof that the 10.4% differential is a major dispute is that the issue was expressly referenced in PEB 251's

1

Report to the President on August 23, 2024 (See, McGreal Dec. ¶ 24; Exhibit D) (the "PEB 251 Report"). Indeed, PEB 251 expressly identified the 10.4% differential as a specific deal point for the CBA in its "Summary of Recommendations". (*Id*. at 39). As a result, on December 21, 2024, Plaintiff filed its Final Offer with PEB 252, expressly including a proposal on the 10.4% differential issue. (McGreal Supp. Dec., ¶¶ 6 & 9, Exhibit 1 at 38).

Following a hearing that took place on January 5 and 6, 2025, PEB 252 issued its Report to the President, where it selected Plaintiff's Final Offer as the "most reasonable" of the two Final Offers that were presented to the Board. *Id.* (the "PEB 252 Report"). Under the RLA's major dispute resolution procedure, the parties now have 60 days from the date PEB 252 was issued to voluntarily resolve this major dispute, including the major dispute over Plaintiff's proposal on the 10.4% differential. Plaintiff continues to maintain that its Final Offer on the 10.4% differential be included in any settlement between the parties. The parties remain obligated to maintain the status quo during this 60-day period pursuant to 45 U.S.C. 159a. Thus, the parties have until March 21, 2025 to resolve the major dispute before the parties may legally resort to self-help under the RLA's major dispute resolution procedures.

The Third Circuit has "emphasized that major disputes involve **changes in the rates of pay**, rules, or working conditions that are currently part of existing

2

collective bargaining agreements." *General Committee of Adjustment, United Transp. Union, etc. v. CSX R. Corp.*, 893 F.2d 584, 589 (3d Cir. 1990) (emphasis added). Thus, the Court must reject the BLET's argument as frivolous and unsubstantiated to the extent it seeks to characterize the 10.4% differential dispute as a "minor" dispute. Such a position runs afoul of both the express language of the RLA, the findings of PEB 251 and PEB 252, and established precedent.

While Plaintiff agrees with Defendant's argument that while it negotiates for a new CBA, it is legally obligated to comply with the current CBA, Plaintiff disagrees with Defendant over what complying with the current CBA entails. Plaintiff asserts that the *status quo* under the current CBA is entirely consistent with PEB 251's findings and Plaintiff's Final Offer to PEB 252 – that even when SMART-TD reaches an agreement to increase pay rates of Conductors while the BLET is still negotiating for a new CBA, the wage increases given to SMART-TD are not implemented for BLET's Engineers until after the Parties (NJTRO and BLET) have reached an agreement on the new CBA. That interpretation of the 10.4% differential provision is consistent with over 40 years of past practice under the CBA since the 10.4% language was agreed upon in 1982. Plaintiff's proposal to PEB 252 on the 10.4% differential simply confirms PEB 251's finding that it is part of the CBA negotiations (major dispute) and clarifies how the 10.4% differential has always been handled in the past and how it will be handled in the future. While

3

Plaintiff is complying with the current CBA, it is seeking, through the RLA major dispute resolution process, including PEB 252 and now through direct negotiations with Defendant, to obtain language clarifying how the 10.4% differential should be applied, both retroactively to January 1, 2020 and prospectively. This is clearly a major dispute and this Court must therefore intervene to ensure that an Arbitrator does not get involved and disturb the status quo while this major dispute is being appropriately handled through the RLA's major dispute resolution process.

II. **Defendant Never Had the Right to Immediate Payment of the 10.4% Differential Upon Receipt of Wage Increases by SMART-TD.**

Defendant argues in its Opposition papers that the fact that BLET did not assert its rights to the immediate payment of the 10.4% differential in the prior 42 years every time that SMART-TD signed a CBA before BLET, does not result in a forfeiture of its rights. To be clear, Plaintiff is not arguing that BLET had a right to immediate payment of the 10.4% differential but forfeited that right. Rather, Plaintiff's position is that BLET never had the right to immediate payment of the 10.4% differential prior to agreeing to a new CBA. The parties' past practice does not serve as a basis for forfeiture of the BLET's rights… it serves as evidence that no such right ever existed. The parties have always understood that under the RLA's *status quo* provisions, Plaintiff was not legally permitted to increase Engineers' pay rates until a new CBA was reached. The *status quo* over the past 42 years since the original 10.4% differential language was agreed to is that Plaintiff makes the

4

Engineers' whole for the 10.4% differential (including retroactive pay) only <u>after</u> an agreement on a new CBA is finalized with the BLET.  Consistent with the RLA's mandated *status quo* provisions, this is how the 10.4% differential has always been understood, interpreted, and applied by the parties.

Defendant cannot now ask this Court to disregard 40-plus years of understanding and interpretation of their Agreement to claim that it always ensured the unilateral 10.4% differential "at all times." See, *Air Line Pilots Ass'n v. Eastern Air Lines*, 863 F.2d 891, 896 (D.C. Cir. 1988) ("To gain a complete picture of the relationship between the parties, and thus of the scope of the dispute to be settled by the provisions of the RLA, courts must consider the express terms of any agreements and well-established practices that have developed through the past course of dealings.")

In fact, the Supreme Court has long considered the parties' past practice when determining if there was a violation of the RLA's *status quo* period. Specifically, in *Detroit & Toledo Shore Line R. Co. v. Transportation Union*, 396 U.S. 142 (1969), the Supreme Court acknowledged:

> the mere fact that the collective agreement before us does not expressly prohibit outlying assignments would not have barred the railroad from ordering the assignments that gave rise to the present dispute if, apart from the agreement, such assignments had occurred for a sufficient period of time with the knowledge and acquiescence of the employees to become in reality a part of the actual working conditions. **Here, however, the dispute over the**

5

> **railroad's establishment of the Trenton assignments arose at a time when actual working conditions did not include such assignments. It was therefore incumbent upon the railroad by virtue of § 6 to refrain from making outlying assignments at Trenton or any other place in which there had previously been none, regardless of the fact that the railroad was not precluded from making these assignments under the existing agreement.**

*Id.* at 153-54 (emphasis added).

Defendant here is asking this Court to follow the same logic rejected by the Supreme Court in *Shore Line*. There is no dispute that the parties have maintained a longstanding and consistent past practice of completing negotiations with BLET prior to implementing any wage increase, regardless of the prior completion of SMART-TD negotiations. Despite the parties' 42 years of past practice, the BLET now seeks an interpretation of the 10.4% differential agreement that, for the first time, would directly contravene the RLA's prohibition against changing wages during the *status quo* period. BLET claims entitlement "at all times" to immediate pay increases for BLET's Engineers upon any increases to the SMART-TD Conductors' pay, even though providing immediate pay increases is not addressed in the CBA and is contrary to the 42-year past practice of the parties. The Court must reject BLET's argument in this regard.

### III. Defendant's Reasons for Not Filing Claims in the Past When the 10.4% Differential Was Not Immediately Maintained is Irrelevant.

Defendant further argues that its decision not to file claims or seek arbitration in the past when the 10.4% differential was not maintained was "the product of internal union decisions based on the facts and circumstances present each time the 10.4% differential was not maintained." (BLET Brief, p. 20). Defendant's reasons for not filing a claim in the prior 42-year history of the 10.4% differential provision is immaterial. It is undisputed that the parties' consistent past practice has been to wait until the new CBA between Plaintiff and BLET was finalized before implementing any wage increases to bring Engineers up to the 10.4% differential both retroactively and prospectively. That has been the consistent and unwavering practice with respect to the 10.4% differential since its inception. While BLET correctly argues that Plaintiff must maintain the status quo under the current CBA language while it engages in bargaining for a new CBA, it is clear that Plaintiff's position that no pay increases be provided to Engineers until the new CBA has been agreed to is 100% consistent with maintaining the *status quo* under the current CBA. This is the case regardless of what reasons the BLET may claim to have had for its prior decisions not to file a claim when the 10.4% differential was not maintained during bargaining between Plaintiff and BLET for a new CBA.

Accordingly, the BLET's attempt to arbitrate the 10.4% differential issue before SBA 940 while the parties remain involved in a major dispute over the issue, seeks an unlawful change to the *status quo* under the current CBA.

IV. **The Current CBA is, at the very least, Ambiguous Concerning the Timing of the 10.4% Differential Payment When SMART-TD Conductors Receive a Wage Increase.**

Defendant argues, utilizing only conclusory statements, that the current CBA is clear and unambiguous in requiring immediate payment of wage increases to BLET's engineers upon Plaintiff increasing the pay rates of SMART-TD Conductors. Such assertion is unsupported by the express language of the 10.4% provision, which the BLET quotes on page 2 of its Brief. The relevant language from the December 29, 1982 Letter of Understanding ("LOU") is silent as to the timing of the 10.4% payment or how the 10.4% differential is treated during the RLA's *status quo* period when the 10.4% differential is itself part of a major dispute. Plaintiff agrees that absent an agreement to eliminate the 10.4% differential, Plaintiff would be obligated to make Engineers' whole retroactively for the 10.4% differential after agreeing upon a new CBA. However, there is nothing in the express language of the 1982 LOU that expressly references <u>when</u> the 10.4% differential must be paid. This ambiguity is appropriately understood by construing it consistent with both the RLA's *status quo* provisions and by the consistent 42-year past practice demonstrating how the provision has been handled. The BLET

8

does not dispute that over the 42-years since the provision was agreed to, when SMART-TD reached agreement prior to BLET, Plaintiff <u>never</u> paid the 10.4% differential to BLET until <u>after</u> BLET reached agreement for a new CBA with Plaintiff (i.e. until after the <u>major</u> <u>dispute</u> was resolved). In all cases, the Engineers were made whole, including retroactively, to ensure that the 10.4% differential provision was complied with. Thus, Defendant's argument that the timing of the 10.4% differential provision in the LOU is clear and unambiguous in requiring immediate payment of wage increase to BLET's Engineers whenever SMART-TD Conductors receive wage increases must be soundly rejected. Rather, the language as to the timing of the payment is silent, as the parties always understood that consistent with the RLA's *status quo* provisions, Plaintiff could not increase wage rates for Engineers during the pendency of the major dispute over the new CBA.

## V. **The Norris-LaGuardia Act Does Not Preclude this Court from Issuing Injunctive Relief to Enjoin the 10.4% Differential Arbitration.**

In its Opposition papers, Defendant admits that the Norris-LaGuardia Act ("NLA") does not prohibit the Court from issuing a temporary or permanent injunction in a case growing out of a labor dispute so long as: (a) there is a hearing in open court with testimony (and an opportunity for cross-examination) in support of the allegations in the complaint, and (b) the court reaches a finding of fact that the five prongs of the test for an injunction are met. Neither of those prerequisites for

9

an injunction would preclude the Court from issuing the relief requested by NJTRO here.

First, a hearing in open court is scheduled for Tuesday, January 28, 2025, at which time the Carrier will present testimony of witnesses in open court in support of the allegations in the complaint.

Second, the criteria for an injunction under the NLA is essentially the same criteria that is used in the Third Circuit as the standard for a court granting a TRO or Preliminary Injunction. NJTRO has already fully briefed the arguments demonstrating why it meets that criterion in its initial Memorandum of Law in support of this application (See, Memorandum of Law in Support of Motion, Point A, p. 12-29). While Plaintiff will not repeat those same arguments here, it will address a few of the arguments concerning the NLA's criteria that were addressed in Defendant's Opposition papers.

### A. Plaintiff Satisfies the First Prong of the NLA's requirements for Injunctive Relief Because Absent Injunctive Relief, Unlawful Acts will be Committed.

The first prong of the criteria for issuance of an injunction under the NLA, 29 U.S.C. 107, is that absent an injunction, unlawful acts will be committed. All the arguments set forth in Plaintiff's initial Memorandum of Law that supported Plaintiff's position as to the likelihood of success on the merits are the same points that support Plaintiff's position that absent the issuance of a TRO and/or Preliminary

10

Injunction to enjoin the 10.4% differential arbitration, unlawful acts will be committed. (See, Memorandum of Law, p. 13-20). Specifically, having a third-party arbitrator decide the merits of a major dispute and potentially require Plaintiff to increase pay rates of Engineers during the pendency of the major dispute over the new CBA would be unlawful. It would violate the RLA's *status quo* provisions, as well as the terms of the Executive Order that created PEB 252. Only an agreement of the parties for a new CBA in the context of the ongoing major dispute should be allowed to determine the timing and amount of the pay increases sought by Defendant. Defendant's attempt to seek to bypass the RLA's required major dispute resolution process by seeking arbitration of this major dispute is unlawful and must be enjoined by the Court.

### B. Plaintiff Satisfies the Second Prong of the NLA's Requirements for Injunctive Relief Because the Irreparable Harm to Plaintiff Would be "Substantial."

The second prong of the NLA's requirements for issuance of an injunction is that "substantial and irreparable injury" will result to Plaintiff. 29 U.S.C. 107. Plaintiff contends that there is no disputing the fact that the irreparable injury that Plaintiff would incur absent injunctive relief would be "substantial." In Point A, Section 2 of Plaintiff's initial Memorandum of Law in Support of the Motion, Plaintiff fully sets forth the basis for its position that Plaintiff will suffer irreparable harm absent equitable relief. (See, Memorandum of Law, p. 21-27). Those

11

arguments need not be repeated here, but Plaintiff asserts those same arguments support its position that the irreparable harm described would be "substantial." Even using a more rigorous standard than for an ordinary request for injunctive relief, the fact that failure to enjoin the 10.4% differential arbitration would completely disregard the RLA's *status quo* provisions by allowing SBA 940 the discretion to impose an increase to Engineers' pay rates and compensation during the pendency of the major dispute and while the issue of the 10.4% differential is being negotiated by the parties through the RLA's dispute resolution procedures set forth in 45 U.S.C. 159a, demonstrates that the irreparable harm should be characterized as substantial. Plaintiff repeats and reasserts all the arguments in Point A, Section 2 of the initial Memorandum of Law as support for the position that the irreparable harm would meet the NLA's standard for being substantial.

        C. **Section 8 of the Norris-LaGuardia Act Does Not Preclude Injunctive Relief Because Plaintiff's Hands Are Clean as a Whistle.**

Defendant's final argument concerning the NLA is that Section 8 of the NLA (29 U.S.C. 108) precludes Plaintiff from obtaining relief from this Court because Plaintiff somehow has unclean hands. Plaintiff vehemently objects to the assertion that it has unclean hands or that it did not make every reasonable effort to settle the dispute.

The premise of Defendant's argument is that Section 8 of the NLA required Plaintiff to arbitrate the 10.4% differential dispute before seeking an injunction from this Court. That argument is nonsensical. While Plaintiff recognizes that Section 8 of the NLA would not permit the Court to issue injunctive relief if Plaintiff "failed to comply with any obligation imposed by law" or "failed to make every reasonable effort to settle" the dispute, there is no obligation imposed by law that compels a carrier to arbitrate a major dispute, such as the 10.4% differential dispute. Moreover, Plaintiff has fully complied with its obligations under the RLA with respect to the major dispute. It has bargained in good faith with Defendant, including through federal Mediation. Plaintiff has fully participated in both PEB 251 and PEB 252 and met all legal requirements.

There is no legal obligation to arbitrate a major dispute. However, on June 21, 2024, when the National Mediation Board ("NMB") proffered arbitration to the parties, the BLET exercised its right to reject the proffer of arbitration, which precluded the option to arbitrate the major dispute. Thus, there is no basis for Defendant's allegation that Plaintiff has unclean hands, or that Section 8 of the NLA would preclude this Court from issuing injunctive relief. It should be noted that PEB 252 recommended Plaintiff's Final Offer over the Final Offer submitted by Defendant. Plaintiff remains willing to finalize a CBA with the BLET pursuant to the terms recommended by PEB 252, which is further demonstration that Plaintiff

13

has made every reasonable effort to settle this dispute with Defendant. Regardless, Plaintiff's hands are clean, as Plaintiff has complied with its legal requirements under the RLA and made every reasonable effort to settle this dispute.

### VI. The PEB Reports Demonstrate the Existence of a Major Dispute.

PEB 251 and 252 issued their Reports to the President on August 23, 2024 and January 20, 2025 respectively. (See, McGreal Dec. ¶ 24; Exhibit D; McGreal Supp. Dec. ¶ 9, Exhibit 1). After a hearing, PEB 251 determined that the 10.4% differential was a material component of the determinations made under the RLA's PEB process and therefore subject to the RLA's status quo provisions. Following a separate hearing, PEB 252 considered which party's Final Offer was more reasonable, and selected Plaintiff's Final Offer as the "most reasonable." (See, McGreal Supp. Dec. ¶ 9, Exhibit 1).

Accordingly, PEB 252 understood "how the observation in PEB 251's Report and Recommendations regarding those [10.4%] agreements could have led NJT to include a provision in its Final Offer addressing that disagreement between the Parties." *Id.* Ultimately, the fact that NJTRO's Final Offer – which included a specific proposal relating to the 10.4% differential – was chosen as the most reasonable Final Offer of the parties, demonstrates conclusively that the 10.4% differential issue is a major dispute. Plaintiff's proposal on the 10.4% differential in the Final Offer remains an aspect of the major dispute over the CBA that needs to

be worked out between the parties during the 60-day period following PEB 252's issuance.

Plaintiff notes that PEB 252's reference to the 10.4% differential issue as a "minor dispute" must be disregarded by the Court. (McGreal Supp. Dec. ¶ 9, Exhibit 1, p. 38). The legal issue of whether the 10.4% differential dispute was major or minor was: (a) not before the PEB, (b) not a legal issue that Plaintiff presented any evidence or arguments on, and (c) not within the expertise of the PEB, who are not judges empowered to interpret laws. Only this Court is empowered to decide this legal issue of whether the dispute is major or minor. Accordingly, the Court must disregard PEB's 252's comments indicating that this dispute is a "minor" dispute.

## CONCLUSION

For all of the reasons set forth above and in Plaintiff's moving papers, Plaintiff respectfully request that this Court grant its Motion for temporary restraints and preliminary injunctive relief.

Respectfully submitted,

Dated: January 24, 2025.  */s/ Doug Solomon*

Doug Solomon (State Bar No. 042771995)
David Solomon (State Bar No. 244262017)
**JACKSON LEWIS P.C.**
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
Email: doug.solomon@jacksonlewis.com
*Attorneys for Plaintiff*
New Jersey Transit Rail Operations Inc.

15